IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION
_____

| | | |
|---|---|---|
| REIDIE JACKSON, PRO SE, | § | |
| TDCJ-CID No. 1164177, | § | |
| Previous TDCJ-CID No. 795456, | § | |
| Previous TDCJ-CID No. 874760, | § | |
| JERMAINE LANDRUM, | § | |
| TDCJ-CID No. 1403311 | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:12-CV-0212 |
| | § | |
| GREGORY BOLAND, | § | |
| MANUEL FRESCAS, and | § | |
| GREGORY S. DAVID, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Before the Court are the following pleadings: the June 13, 2013 Motion for Summary

Judgment filed by defendants BOLAND and FRESCAS, the June 18, 2013 Motion for Summary

Judgment filed by plaintiff REIDIE JACKSON, the June 27, 2013 response by defendants to

plaintiff's Motion for Summary Judgment, and plaintiff's July 3, 2013 Response to defendants

Motion for Summary Judgment, along with briefs and exhibits.

Plaintiff's November 9, 2012 Amended Complaint is the live complaint in this cause.

Plaintiff had also filed a December 26, 2012 pleading entitled "Second Amended Complaint"

which, at plaintiff's election as expressed in his January 10, 2013 Response, was treated as

plaintiff's objections to the December 14, 2012 Report and Recommendation.  These objections

were overruled.

Plaintiff's claims against defendant GREGORY S. DAVID were dismissed January 14, 2013 without prejudice for failure to state a claim on which relief can be granted and with prejudice as frivolous.

By his November 9, 2012 Amended Complaint, plaintiff states he is suing the defendants in their individual capacities.  Plaintiff states he was being housed on E-Pod in the High Security Section of the TDCJ Clements Unit during the events forming the basis of this lawsuit.  Plaintiff claims that, on April 25, 2012, defendant FRESCAS, in retaliation for plaintiff's successful complaints about other officers on the pod, refused plaintiff an hour of recreation, transferred him to E-Pod cell 201 instead of transferring plaintiff off of E-Pod as plaintiff says should have been done after plaintiff received a level promotion.  Plaintiff alleges defendant FRESCAS later attacked plaintiff, cutting plaintiff's arm with a metal bar of some sort.  Plaintiff further states that prior to the assault and while he was being moved to cell 201, he complained to defendant BOLAND because FRESCAS was one of the officers escorting him and because plaintiff contended he was being wrongfully transferred to cell 201 instead of off of E-Pod.  Plaintiff says defendant BOLAND told plaintiff he had to move or they would use force against him.  Plaintiff further complains that, after the attack by FRESCAS, BOLAND refused to escort or order plaintiff be escorted to get medical treatment and instructed officers not to pick up any documents from plaintiff's cell so that plaintiff would be prevented from submitting a request for medical treatment.  Plaintiff alleges the cut on his arm became infected but that another inmate gave him some antibiotics and the wound healed.

Plaintiff requests a declaration that he had a liberty interest in state created procedures; and also requests compensatory damages of $15,000.00 from each defendant and punitive damages of $5,000.00 from each defendant.

## UNDISPUTED FACTS

During the time relevant to this case, plaintiff was an inmate assigned to the Clements Unit in Amarillo, Texas, and defendants BOLAND and FRESCAS were employed by the Texas Department of Criminal Justice.  Although plaintiff bases his complaint on what he calls a use-of-force incident on April 25, 2012, TDCJ has no record of a Use of Force incident on that date.  Instead, TDCJ records classify the incident as an inmate assault against FRESCAS.  Plaintiff's medical records and sick call requests do not indicate he ever complained of a cut on his arm.  Lastly, there is no dispute that the defendants are sued in their individual capacities only.

## FACTUAL ALLEGATIONS

Plaintiff alleges that, on April 25, 2012, defendant FRESCAS, in retaliation for plaintiff's successful complaints about other officers, refused plaintiff an hour of recreation, saying plaintiff couldn't go because of the trouble he and the other inmates had caused other security officers by complaining about them.  Plaintiff says defendant FRESCAS wrote plaintiff a false disciplinary case for failure to groom in order to justify the refusal of recreation and told plaintiff he would not be moved when plaintiff received his promotion to level 1.

Plaintiff alleges, later that day, when plaintiff received his promotion to level 1, defendant FRESCAS wrongfully had plaintiff moved upstairs in E-Pod to cell 201.  Plaintiff argues this violated state law requiring inmates of different classifications not to be housed together.  Plaintiff contends he complained to an officer Ortega, but that the officer did nothing.  While being escorted to the cell, plaintiff also complained to defendant Captain BOLAND "explain[ing] in brief the situation that defendant FRESCAS had presented him with."  Plaintiff alleges defendant BOLAND simply replied that, regardless of what else happened, plaintiff must move according to policy, or they would use force against him.

Plaintiff alleges in this lawsuit that defendant BOLAND failed to "anticipate and defuse in advance those situations which might give rise to conflict, confrontation and violence" as required by prison policy.

Plaintiff alleges defendant FRESCAS and an Officer Vasquez did not change Pods with other officers at the middle of the shift, but remained on E-Pod for the purpose of retaliating against plaintiff, humiliating and frightening him by calling him a coward and showing him a motto that said, "we take care of our own."

As to the use of force itself, plaintiff alleges defendant FRESCAS ordered plaintiff to step back from the door of his cell and had plaintiff's cell door opened so he could attack plaintiff. Plaintiff alleges that when the cell door opened defendant FRESCAS entered and cut plaintiff on the forearm with a metal object.  Plaintiff says he then punched FRESCAS.  Plaintiff alleges defendant FRESCAS then wrote plaintiff a false disciplinary case saying plaintiff assaulted him.

When Captain BOLAND arrived plaintiff says "[d]efendant FRESCAS' nose was bleeding and [p]laintiff's forearm was bleeding.  There was blood everywhere."  He says BOLAND ordered a video camera be turned on and informed plaintiff he was being demoted back to level 3 and must move back to one row.

Plaintiff was then taken back to the first level of E-Pod.  Plaintiff says that when he showed defendant BOLAND his wound and requested medical treatment, BOLAND responded that plaintiff had "gotten what he deserved."  Plaintiff says he was not treated and bled until he passed out.  He alleges staff refused to pick up any paper work from plaintiff's cell because defendant BOLAND ordered them not to.  Plaintiff says he received no medical treatment and the wound became infected until he borrowed some antibiotics from another inmate which cleared up the infection.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In support of their motion for summary judgment, defendants BOLAND and FRESCAS

present the following evidence:

| | |
|---|---|
| Defendants' Exhibit A | Relevant portions of Plaintiff Jackson's medical records with business records affidavit, Bates Numbered MSJ 1-150; |
| Defendants' Exhibit B | Relevant portions of Plaintiff Jackson's Classification Records with business record affidavit, Bates Numbered: MSJ 151-152; |
| Defendants' Exhibit C | Affidavit of Manuel Frescas, Bates Numbered 153-155 |
| Defendants' Exhibit D | Affidavit of No Records regarding Use of Force Report for April 25, 2012, Bates Numbered MSJ 156; |
| Defendants' Exhibit E | All I-60 Sick Call Request Forms submitted by Plaintiff between April 25, 2012 and November 15, 2012 (compiled from plaintiff's medical and classification records), Bates Numbered MSJ 157-171 |

Defendants argue there is no evidence to support plaintiff's claim of excessive force and

that the competent summary judgment shows less than a scintilla of evidence that plaintiff

suffered any physical injury whatsoever.  Defendants further argue plaintiff does not allege

defendant BOLAND was involved in the alleged use of force.  Defendants argue the evidence

does not support plaintiff's claim that they, or either of the defendants, were deliberately

indifferent to his serious medical need.  Defendants point to the absence of an I-60 requesting

medical treatment for an injury stemming from the alleged use of force and argue plaintiff did not

show the alleged wound to a health care provider in subsequent infirmary visits.  Defendants

argue plaintiff has failed to state a cause of action for either conspiracy or retaliation.  Pointing to

plaintiff's classification records and defendant FRESCAS' Affidavit, defendants contend plaintiff had been reviewed by the Classification Committee the day before the alleged incident, it had been determined plaintiff would remain in administrative segregation and that FRESCAS, as a correctional officer, had no authority to change that determination or assign housing to inmates. Therefore, plaintiff cannot show his retention in administrative segregation was a retaliatory act by FRESCAS.  Defendants also contend plaintiff's allegations of retaliation based on his conflict with other correctional officers does not prove the challenged acts were in retaliation for the exercise of a constitutional right.

Defendants contend plaintiff has not alleged or proven any operative facts to support his claim of conspiracy and such a claim is conclusory.

Defendants note that, despite plaintiff's conclusory allegations that all the officers on the unit were conspiring against the inmates and that on some occasions plaintiff's food and that of other inmates had been poisoned, plaintiff has not specifically claimed defendants BOLAND and/or FRESCAS engaged in poisoning his food on any occasion.

Lastly, defendants claim they are entitled to qualified immunity and argue plaintiff's claims of excessive use of force, deliberate indifference, conspiracy, and retaliation are not supported by the evidence; therefore, plaintiff has not satisfied the first prong of overcoming qualified immunity by stating a claim for a violation of a constitutional right and the evidence of record demonstrates they are entitled to the defense of qualified immunity from plaintiff's excessive use of force claims against them in their individual capacities.

**PLAINTIFF'S RESPONSE**

Plaintiff presents the following evidence in response to defendants' motion for summary judgment:

Exhibit A      Affidavit by Robert Lamont Bell TDCJ-CID # not given

Exhibit B      Affidavit by Thomas Shanks TDCJ-CID #718035

Exhibit C      Affidavit by plaintiff and related grievance no. 2013064426

Exhibit D      "Official Statement" by defendant Capt. BOLAND [denominated JACKSON 342 in lower right corner[1]]

Exhibit E      Use of Force Nursing Note dated April 22, 2012 [Jackson 92-93] and "No records" Affidavit for EAC report for April 26, 2012 and April 1,2012 through May 1, 2012/Cause #CA 100851/R. Jackson v. Boland, et al." [Jackson 508]; "No Records Affidavit" for Unit Incident Report for April 1, 2012 to May 1, 2012 [Jackson 512]

Exhibit F      Affidavit by plaintiff; Step 1 Grievance no. 2012160993; Step 2 Grievance no. 2012160993

Exhibit G      1st Shift ECB Turnout Roster for April 25, 2012 [Jackson 486]

Exhibit H      Affidavit by plaintiff

Exhibit I      Drawing by plaintiff

Plaintiff argues he has state-created rights based on the mandatory language of the regulations and the various procedures established by TDCJ in their policies and customs regarding where an inmate is to be celled, the transfer of inmates from one cell to another, the entrance of guards into an inmate's cell, the guards' assignment to various pods, the use of force, and access to medical personnel and medical care.  Plaintiff contends these state-created rights were violated and that these violations in and of themselves constituted a violation of plaintiff's federal constitutional rights.  Plaintiff also points to record evidence supporting his version of the

---

[1]Other documents similarly marked are simply referenced, for example, as "[JACKSON 001]."

facts and contends defendant FRESCAS remained on E-pod the afternoon of the alleged incident only for the purpose of attacking plaintiff, that defendant BOLAND failed in his duty to anticipate and defuse situations which might devolve into conflict or a use of force, that defendant FRESCAS entered plaintiff's cell without any mattress and hit plaintiff on the arm with a metal object for the sole purpose of causing plaintiff harm, and FRESCAS and BOLAND conspired to ensure plaintiff would be denied medical care for his wound.

Plaintiff also challenges the conclusions defendants urge the Court to draw from plaintiff's medical records, stating the "evaluation" referenced by defendants was merely a review of plaintiff's medical chart to determine if he was mentally competent to attend a disciplinary hearing.

## PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT AND DEFENDANTS' RESPONSE

Plaintiff has also filed a motion for summary judgment.  Plaintiff presents a copy of the disciplinary hearing report for the disciplinary case plaintiff received  for assaulting defendant FRESCAS and an unsworn affidavit made under penalty of perjury stating that, after the incident, defendant BOLAND ordered plaintiff to strip and be escorted to another cell, but at no time was any medical assessment/treatment given to plaintiff in relation to the incident.  Plaintiff also states that in his ten years of incarceration in prison, he has seen other incidents like the one forming the basis of this lawsuit and "[e]ach time [he] saw an incident like this occur[, a] medical assessment was made by a medical professional."  Plaintiff says he wanted medical treatment, but if he had not followed defendant BOLAND's instructions, force would have been used to gain his compliance.

Plaintiff argues the existing TDCJ medical plan requires participants in a violent altercation to receive assessment/treatment.  Plaintiff states there is no dispute that there was a physical altercation between defendant FRESCAS and himself which resulted in profuse bleeding and blood on the floor.  Plaintiff argues after the altercation he was ordered to move to another cell without being given the medical treatment that would have been available to any other "similarly situated person."  Plaintiff asks that the Court grant him summary judgment on the issue of whether the defendants had a constitutional duty under these circumstances to have plaintiff assessed and treated by a medical professional.

Defendants respond to plaintiff's contentions by pointing out that the disciplinary hearing report produced by plaintiff refers to the incident as an attack by plaintiff, and not as a use of force against plaintiff, and that an uninjured attacking offender would not need to be assessed by medical personnel.  Defendants further contend that the fact that defendant FRESCAS may have violated some TDCJ policy by opening plaintiff's cell door without first handcuffing plaintiff does not violate the federal Constitution.

## THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(a).  Consequently, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof.  *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Only disputes of fact that could affect the outcome of the suit at trial will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552.  A motion for judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict.  If there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then the motion for judgment as a matter of law should be denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

## THE STANDARD OF SUMMARY JUDGMENT REVIEW
## UPON A PLEA OF QUALIFIED IMMUNITY

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472, U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Since qualified immunity depends on whether the defendant violated a clearly established constitutional right, a preliminary inquiry must be made whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).  Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).  The second prong of the qualified immunity test is whether the constitutional right alleged to have been

violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id.* (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Although it may be "difficult to imagine factual circumstances in which a trier of fact could find deliberate indifference as defined by *Farmer*[2] and nevertheless conclude that a reasonable person in defendant's position was not chargeable with knowledge that his or her actions violated the plaintiff's clearly established constitutional rights," in analyzing a claim of qualified immunity, the test is objective reasonableness, not subjective deliberate indifference. *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998)(quoting *Briecke v. Coughlin*, No. 92-CV-1211, 1994 WL 705328 at 6 (N.D.N.Y.Dec. 16, 1994). Consequently, at the qualified immunity stage, the deliberate indifference standard only allows an examination of whether, under the standard not to be deliberately indifferent, the acts or omissions of the defendant were objectively unreasonable as a matter of law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998).

---

[2]Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

## ANALYSIS OF PARTIES' MOTIONS FOR SUMMARY JUDGMENT

**CONSPIRACY**

Plaintiff claims defendants BOLAND and FRESCAS conspired to deprive him of medical care after the alleged excessive force.  Plaintiff has failed, however, to allege any material facts to support his claim of conspiracy and has failed to point to any evidence establishing the necessary material facts.  As is set out below, defendant FRESCAS was injured and was not present after the alleged use of force.  It is well settled that " 'mere conclusory allegations of  conspiracy cannot, absent reference to material facts,' state a substantial  claim of federal conspiracy." *McAfee v. 5th Circuit Judges*, 884 F.2d 221 (5th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990).  Plaintiff's conclusory allegation fails to state a claim of conspiracy on which relief can be granted as to both of these defendants.

**RETALIATION**

Plaintiff alleges defendants retaliated against him because of successful complaints he made against other TDCJ officers.  To claim retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).  Prisoners retain, in a general sense, a right to criticize prison officials.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir.1995); *Gibbs v. King,* 779 F.2d 1040, 1046 (5th Cir.1986) (quoting *Ruiz v. Estelle,* 679 F.2d 1115, 1153 (5th Cir.), *opinion amended in part and vacated in part,* 688 F.2d 266 (5th Cir.1982)) ("[P]rison officials [are] prohibited from 'retaliation against inmates who complain of prison conditions or official misconduct.' ").

Plaintiff claims defendant FRESCAS retaliated against him by refusing plaintiff a hour of recreation on April 25, 2012, the date of the incidents alleged in this lawsuit.  Plaintiff also alleges FRESCAS wrote him a false disciplinary case for failure to groom in order to justify the

recreation refusal.  Plaintiff feels he was appropriately groomed because he had been allowed to

appear before the Classification Committee the previous day and states he would not have been

allowed to appear if he had failed to groom.  This Court does not review the outcomes of minor

disciplinary cases, but notes that even if plaintiff was groomed one day it does not mean he was

appropriately groomed the next day.  Plaintiff has not shown this disciplinary case was overturned

or determined to be invalid.  Further, he has not presented or pointed to any record evidence

showing he was wrongly found guilty of the grooming charge or that there was a conspiracy

involving FRESCAS and the disciplinary hearing officer to wrongly find him guilty.  The

existence of a proper disciplinary report, while not an absolute bar to a retaliation claim, is

probative and potent summary judgment evidence.  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.

1995).  Plaintiff has not presented sufficient facts to support his claim of retaliation against

defendant FRESCAS with respect to the denial of recreation.  Further, plaintiff has failed to

present evidence which defeats defendant FRESCAS' entitlement to qualified immunity.

Plaintiff next claims defendant FRESCAS retaliated against him by not moving him off E-

Pod after he received a promotion to Level 1 which plaintiff says qualified him for a transfer to

another pod; however, defendants have presented unrebutted evidence that defendant FRESCAS

has "no authority or control over housing assignments of offenders." [defendants' Exhibit C MSJ

153].  Further, the day before the alleged incident, plaintiff was reviewed by the Classification

Committee and a determination was made to keep plaintiff in administrative segregation

[defendants Exhibit B MSJ 152].  Defendants's unrebutted summary judgment proof shows that,

despite plaintiff's allegations, plaintiff did not have a classification change and, therefore, there

was no violation of law or policy concerning his housing or, if true, his being housed with inmates

of different classifications.  Moreover, since the unrebutted record evidence shows FRESCAS

didn't have the authority to decide plaintiff's housing, plaintiff has failed to show that any failure by FRESCAS to transfer plaintiff to a cell off E-Pod was a retaliatory act. Plaintiff has failed to present evidence of a retaliatory adverse act and of causation. In addition, plaintiff has failed to defeat defendant FRESCAS' entitlement to the defense of qualified immunity on this issue.

Plaintiff has alleged no facts to support retaliatory intent by defendant BOLAND. The only thing he says BOLAND did was to tell plaintiff that plaintiff got what he deserved when plaintiff complained of a small cut on his arm. Since plaintiff has alleged no fact nor presented any evidence that BOLAND knew plaintiff received the cut as a result of the exercise of or in violation of a constitutional right, plaintiff has not shown retaliatory intent or causation, essential elements of a retaliation claim. An inmate does not have a constitutionally protected right to attack a prison guard. Plaintiff's retaliation claim against BOLAND should be dismissed for failure to state a claim on which relief can be granted; his retaliation claim against defendant FRESCAS should be dismissed with prejudice on the merits and on the basis of qualified immunity.

## EXCESSIVE FORCE CLAIM

The malicious and sadistic use of force to cause harm violates contemporary standards of decency; however, not every malevolent touch, push, or shove by a prison guard gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). *See, Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973))("[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights). *De minimis* uses of physical force are excluded, provided that the use of force is not "'repugnant to the conscience of mankind.'" *Whitley v. Albers*, 475 U.S. at 327, 106

S.Ct. at 1088 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251

(1976)(internal quotation marks omitted).

In examining a claim of excessive force, the core inquiry is "whether the force was applied

in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very

purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117

L.Ed.2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d

251 (1986)).  To determine whether the use of force could plausibly have been thought necessary

or evinced a wanton infliction of pain, the Court may evaluate the need for the application of

force, the relationship between that need and the amount of force used, the threat reasonably

perceived, and any efforts made to temper the severity of the response by prison officials.

An absence of serious injury is relevant to this inquiry, but does not constitute the entirety

of the inquiry.  *Id.* 503 U.S. at 7, 112 S.Ct. at 999.

The Court's analysis of this case is guided by the Supreme Court's reasoning in *Hudson*.

The *Hudson* court noted "the <u>blows</u> [emphasis added] directed at Hudson, which caused bruises,

swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment

purposes." *Id.*  On that basis, the *Hudson* court concluded the extent of the inmate's injuries

provided no basis for dismissal of his § 1983 claim.

Post *Hudson*, the Fifth Circuit, examining a use of force which consisted of a guard

twisting an inmate's ear resulting in a bruise lasting three days found the force to be *de mimimis*,

and affirmed the dismissal of the case as frivolous.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th

Cir. 1997).  By contrast, when examining force alleged to consist of knocking an inmate down so

his head struck the concrete floor, scraping his face against the floor, repeatedly punching him in

the face, kicking the inmate in the face, and two officers then continuing to beat him, resulting in a

contusion, cuts, and scrapes, the Fifth Circuit found summary judgment was precluded by the existence of a material fact issue as to whether the prisoner had suffered more than *de minimis* physical injury.  *Gomez v. Chandler*, 163 F.3d 921, 924-925 (5th Cir. 1999).

Plaintiff contends the blow he alleges was inflicted upon him was, like those alleged in *Gomez*, not applied in a good faith effort to maintain or restore discipline but instead, was inflicted solely for the purpose of causing harm.  Plaintiff has offered some evidence to support this scenario, bringing his case within the scope of *Gomez*.

Defendants contend there is no evidence that plaintiff sustained any injury at all from the alleged use of excessive force and, therefore, that plaintiff has failed to establish an essential element of his claim.  Plaintiff, however, has presented the unsworn affidavit under penalty of perjury from inmate Thomas Shanks, who states he saw defendant FRESCAS and Officer Vasquez walk toward plaintiff's cell, heard FRESCAS order plaintiff to back away from the cell door, heard sounds of a scuffle in plaintiff's cell, and saw plaintiff being escorted to One Row by defendant BOLAND and other officers.  Inmate Shanks states he noticed plaintiff had some grease on his right elbow where there was a small open cut[3].  Shanks says after plaintiff was in his new cell, plaintiff told BOLAND he needed medical assistance because his arm had been cut and BOLAND responded that he got what he deserved.

Plaintiff has also submitted the unsworn affidavit of inmate Robert Lamont Bell stating he witnessed defendant FRESCAS enter plaintiff's cell without plaintiff having been placed in handcuffs.  Inmate Bell states FRESCAS was "in an aggressive stance" and he heard "rumbling" and then saw FRESCAS outside the cell on the floor with his nose bleeding.  He says FRESCAS was taken to the infirmary by several officers and plaintiff was escorted by defendant BOLAND

---

[3]Exhibit B to plaintiff's Response to Defendants' Motion for Summary Judgment, at page 2.

and other officers to One Row.  He says when plaintiff was in his cell, he "started hollering for Captain Boland to get medical down there because Frescas had cut him, and he couldn't stop the bleeding."  He says BOLAND responded plaintiff got what he deserved.  Inmate Bell further states "[i]t took several days before another inmate sent Jackson some antibiotics because he said his wound had gotten infected."

Plaintiff has also submitted his own unsworn statement that, when FRESCAS and Vasquez arrived at plaintiff's cell, they had no equipment and no mattress.  He states FRESCAS ordered plaintiff to back away from the door and ordered the door opened.  Plaintiff says when FRESCAS entered plaintiff's cell, he had a small, sharp, metal object in his left hand and approached plaintiff in an aggressive manner, swinging his left hand with the metal object and "made a cut on plaintiff's forearm."  Plaintiff says he had lifted his arms to protect his face and swung at FRESCAS, hitting him in the face and knocking him out of the cell.

Plaintiff says he and FRESCAS were both bleeding from their injuries and that he did not see any medical nursing staff after the incident.  He states he was moved to another cell and asked for medical personnel, but BOLAND's response was that plaintiff had gotten what he deserved. Plaintiff further states BOLAND instructed the other officers not to pick up any medical complaints from plaintiff.  Plaintiff concludes his statement saying he bled until he passed out.

Plaintiff then says he caught a "minor infection[4]" in the wound, but another inmate had some amoxicillin and gave it to plaintiff.

By the above-described evidence, it appears plaintiff has submitted evidence to support the elements of an excessive force claim against defendant FRESCAS, including the element of a physical injury.  Defendants have rebutted this evidence with, among other things, a sworn

---

[4]Exhibit H to plaintiff's response to defendants' Motion for Summary Judgment at page 3.

Affidavit by defendant FRESCAS [defendants' MSJ Ex. C] stating he came to the door of plaintiff's cell carrying a mattress to give to plaintiff and that plaintiff hit him without warning, giving him a bloody nose.  FRESCAS further states he never entered the cell, but was going to toss the mattress inside.  FRESCAS denies having any weapon in his hand and says he did not strike plaintiff.  He states the only contact was when plaintiff punched him in the nose [defendants' MSJ Ex. C at MSJ 154].  This conflicting evidence concerning the alleged use of force, however, appears to create a fact issue rather than eliminate one and cannot be resolved by the Court on summary judgment.  Ordinarily the relatively minor[5] to *de minimis* nature of the physical injury alleged by plaintiff could be weighed against the need for the application of force and defendant's efforts to temper it.  If accepted as true, however, plaintiff's summary judgment evidence presents a situation where there was no need for any force, no need for defendant FRESCAS' entrance into plaintiff's cell, and no need for any injury to plaintiff, however, minor, to have occurred.  While defendant FRESCAS has rebutted plaintiff's allegation with his affidavit and with other evidence showing a valid reason to open plaintiff's cell door, evidence showing that FRESCAS did not enter the cell, and that defendant FRESCAS was the victim of an attack initiated by plaintiff, defendants have not shown how this Court can resolve this conflicting evidence at the summary judgment stage.   Therefore, this issue of material fact turns on the credibility of the witnesses and must be resolved by a fact finder.

Defendants do argue there is no evidence to show the existence of any injury and further contend the medical records disprove any claim of injury.  Plaintiff has argued the records do not rebut his evidence of injury.  Plaintiff points out the 4/25/2012 Self-Harm Risk Assessment by a medical provider was conducted before the excessive force incident he alleges occurred that day.

---

[5]Exhibit H to plaintiff's response to defendants' Motion for Summary Judgment at page 3.

Plaintiff also points out that the records of the 4/25/2012 and 4/30/2012 evaluations [MSJ 049-051] by a medical provider and clearance to receive a disciplinary case contain no indication plaintiff was actually seen.  Instead, he contends they show only his most recent vitals from February 24, 2012, his current medications, and that his disciplinary case and EMR documentation was reviewed and input regarding potential mental health concerns was provided to the Disciplinary Hearing Officer.  There are no other records until May 10, 2012 and plaintiff does not allege his minor infection lasted that long.  In some cases the absence of any documentation of an injury in the medical records might constitute valid summary judgment evidence that no injury occurred.  Here, however, plaintiff explains the lack of any medical records of his injury are due to defendants having prevented him from reporting the injury to the medical department.

While plaintiff has alleged and offered proof of only a small injury which, considered by itself, might support a finding of *de minimis* force, the force he alleges caused the injury is that of a completely unprovoked attack by FRESCAS.  Therefore, the force, if determined by a factfinder to actually have occurred as alleged by plaintiff, cannot be excused as *de minimis* because an unprovoked attack on an inmate could be found to be the sort of force which is "'repugnant to the conscience of mankind.'"  *Whitley v. Albers*, 475 U.S. at 327, 106 S.Ct. at 1088 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)(internal quotation marks omitted).

As to defendant BOLAND, defendants argue plaintiff has not alleged facts showing defendant BOLAND was personally involved in the alleged excessive use of force incident. Instead, they point out, the confrontation which triggered the alleged use of force occurred after BOLAND left.  Plaintiff's only response is that he talked with defendant BOLAND before the use

of force while defendant FRESCAS was transferring plaintiff to another cell and defendant

BOLAND told plaintiff he would have to obey FRESCAS' instructions or force would be used to

make him move.  Plaintiff complains defendant BOLAND failed to "anticipate and defuse in

advance those situations which might give rise to conflict, confrontation and violence" as required

by prison policy.  Plaintiff's allegations fail because he has not shown BOLAND should have

inferred harm would come to plaintiff based on plaintiff's general comment to BOLAND.

**STATE-CREATED RIGHT IN POLICY OR PROCEDURE**

In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme

Court held an inmate's liberty interest is "generally limited to freedom from restraint which, while

not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, nonetheless imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." *Id*. at 474, 115 S.Ct. at 2295.  In the

wake of *Sandin*, the scope of a prisoner's potential Fourteenth Amendment due process liberty

claims has been dramatically narrowed and prisoners may no longer comb through state statutes

and prison regulations searching for the "grail of limited discretion" upon which to base a due

process liberty claim.  *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995).  Instead, a prisoner has

a liberty interest only in "freedom[s] from restraint . . . impos[ing] atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally

consist of deprivations which clearly impinge on the duration of confinement.  *Orellana v. Kyle*,

65 F.3d 29, 31-32 (5th Cir. 1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294,

132 L.Ed.2d 418 (1995)).

In several respects, plaintiff claims a federally protected constitutional right in state or

prison policy or procedure because of mandatory language he says is in the policy or procedure.

Plaintiff references this right with respect to an alleged failure to transfer him off E-Pod, the

procedures used to transfer inmates from one cell to another, the entrance of guards into an inmate's cell, the guards' assignment to various pods, the use of force, and access to medical personnel and medical care.  Plaintiff, however, has no free-standing federally protected right to enforcement of prison policy relating to any of these things.  For example, while plaintiff has no unqualified right to the prison medical program, he does have an Eighth Amendment protection against deliberate indifference to a serious medical need.  This does not, however, translate into a free-standing right to have access to the medical program or to medical care.  Additionally, while an inmate has an Eighth Amendment right to be protected from cruel and unusual punishment, this does not translate into a free-standing right to enforce all prison policies and/or procedures concerning uses of force, housing assignments, cell transfers, guard work assignments, or the entrance of a guard into a prisoner's cell.  None of the purported irregularities alleged by plaintiff provide a basis for a claim of constitutional deprivation, not even FRESCAS' failure to ensure plaintiff was handcuffed before he entered plaintiff's cell, a lapse which was the basis for an employment disciplinary action against FRESCAS.  These allegations of violations of TDCJ policy, even if proven, do not, in and of themselves, state or support claims of a constitutional dimension.  Plaintiff's claims in this respect lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989).

**DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF SERIOUS HARM**

The causal connection plaintiff presents between defendant BOLAND's acts or omissions and the alleged use of force is that plaintiff contends BOLAND should have anticipated and defused the situation when plaintiff complained to him during a cell transfer prior to the incident. Thus, it appears plaintiff may be alleging deliberate indifference by BOLAND to a risk of harm to plaintiff.  Although this issue was briefly discussed at page 20 in relation to plaintiff's claims against FRESCAS, the Court will address it here in relation to plaintiff's specific claim against

BOLAND.  Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

In this regard the Supreme Court has cautioned:

[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. at 837-38, 114 S.Ct. at 1979.  It is only under exceptional circumstances that a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk.

Plaintiff was apparently under the belief he was due for level promotion to level 1 and a transfer off of E-Pod.  Instead of being transferred, he says FRESCAS moved him upstairs to cell 201 in E-Pod, level 3, the highest security section.  Defendant FRESCAS was one of four or five guards escorting plaintiff to his new cell.  On the way, plaintiff says he saw defendant BOLAND in front of cell 201 and "explained, in brief, the situation that defendant FRESCAS had presented him with."  Plaintiff says BOLAND replied that "plaintiff must move according to policy or they would use force against him."

These facts are simply not sufficient to support a claim that defendant BOLAND was deliberately indifferent to a substantial risk of serious harm to plaintiff.  Plaintiff has entirely failed to present evidence BOLAND was aware of facts from which he should have inferred plaintiff would be placed in a substantial risk of serious harm, and plaintiff's statement to

BOLAND does not provide that evidence.  Plaintiff has failed to allege or provide proof of deliberate indifference by defendant BOLAND.

**BOLAND'S SUPERVISORY CAPACITY**

If plaintiff's claim against BOLAND is not deliberate indifference, but, instead, hinges upon Captain BOLAND's supervisory position, it still fails.  The acts of subordinates, such as FRESCAS, trigger no individual section 1983 liability for supervisory officers.  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314(5th Cir. 1999).  A supervisory official may be held liable only when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or there is a sufficient causal connection between the official's act and the constitutional violation sought to be redressed.  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987); *Douthit v. Jones*, 641 F.2d 345,  346 (5th Cir.1981) (*per curiam*).  Plaintiff has alleged no fact demonstrating personal involvement by defendant BOLAND in the excessive use of force claim plaintiff asserts against FRESCAS and has failed to state a claim against defendant BOLAND.

## <u>DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS</u>

Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those medical needs are "serious."  *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).  "Deliberate indifference is an extremely high standard to meet."  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291.

Plaintiff admits defendant FRESCAS, who was injured, left after the altercation in plaintiff's cell.  He presents no allegations, much less any evidence, showing that defendant FRESCAS was involved in a deprivation or personally deprived him of medical care for any medical needs, serious or otherwise.  Plaintiff has failed to state a claim of deliberate indifference to his serious medical needs against defendant FRESCAS.

As to defendant BOLAND, plaintiff has alleged there was blood everywhere and that defendant FRESCAS bled "profusely."  In an unsworn statement under penalty of perjury, plaintiff avers that, after being escorted to another cell, plaintiff asked or demanded that BOLAND get medical personnel to treat plaintiff and that BOLAND responded plaintiff had gotten what he deserved.  Plaintiff has presented an unsworn statement under penalty of perjury by Inmate Shanks stating when plaintiff was escorted to his new cell Shanks noticed plaintiff had some grease on his right elbow where there was a small open cut[6].  While plaintiff alleges he bled until he passed out, BOLAND was not present at that time and would not have been aware of any such occurrence, and plaintiff does not set out the basis for his belief that any loss of consciousness he may have suffered was due to blood loss.  Further, plaintiff has stated in an unsworn statement made under penalty of perjury that he got a minor infection[7] in the cut, but got some amoxicillin from another inmate and the cut healed.  From the above, it is clear that plaintiff's evidence, which defendants dispute, shows he suffered at most an injury which his witness described as a "small cut,"[8] and that it satisfactorily healed.

---

[6]Exhibit B to plaintiff's Response to Defendants' Motion for Summary Judgment, at page 2.

[7]Exhibit H to plaintiff's response to defendants' Motion for Summary Judgment at page 3.

[8]Exhibit B to plaintiff's Response to Defendants' Motion for Summary Judgment, at page 2.

Because a fact issues exists whether the force plaintiff alleges defendant FRESCAS used was of the sort which is "'repugnant to the conscience of mankind[,]'" *Whitley v. Albers*, 475 U.S. at 327, 106 S.Ct. at 1088 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)(internal quotation marks omitted), the minor *or de minimis* nature of plaintiff's cut does not foreclose plaintiff's claim of <u>excessive</u> <u>force</u>.   To show deliberate indifference to a serious medical need by defendant BOLAND, however, plaintiff must show BOLAND was actually aware of a substantial risk of <u>serious</u> <u>harm</u> to plaintiff and failed to take any action or that the risk was so obvious that such knowledge can be inferred.   *Farmer v. Brennan*, 511 U.S. at 837-38, 114 S.Ct. at 1979.

A small open cut is not the sort of wound which would normally create a substantial risk of serious harm and an officer's failure to secure medical care for such a minor medical need does not constitute deliberate indifference, *i.e.*, cruel and unusual punishment in violation of the Eighth Amendment.   *Alvarado v. Battaglia*, 539 F.Supp. 2d 1022, 1027-1028 (N.D. Illinois 2008); *Jones v. Lindblad*, No. 05-CV-814S., 2009 WL 804155. at *6-7 (W.D. New York March 25, 2009).

In fact, left untreated, the small open cut developed what plaintiff characterized simply as a "minor infection[9]."   Plaintiff alleges the infection healed in a few days after he got an antibiotic from another inmate, but plaintiff has not produced any evidence that he actually needed the antibiotic or that the wound would not have healed just as readily without it, as small cuts normally do.   Moreover, review of plaintiff's medical records [defendants' MSJ Ex. A] does not reveal any instance in which plaintiff subsequently pointed out to any medical or psychiatric care personnel that he had been cut or reported he had taken any antibiotic.   Further, although plaintiff has alleged that, immediately after BOLAND left him alone after the incident, he bled until he

---

[9]Exhibit H to plaintiff's response to defendants' Motion for Summary Judgment at page 3.

passed out, plaintiff has not presented any evidence to support his conclusion that he passed out from loss of blood and he has not pointed to any place in his medical records where he was later determined to be suffering from blood loss.

Plaintiff has failed to identify record evidence which supports his claim of deliberate indifference to a serious medical need by defendant BOLAND.

Plaintiff further alleges, and even states in his unsworn declaration under penalty of perjury, that defendant BOLAND "instructed his subordinates not to pick up [plaintiff's] medical complaints." Plaintiff's unsworn statement under penalty of perjury does not show plaintiff has personal knowledge of what was said by defendant BOLAND to other TDCJ employees.

Consequently, this is a conclusory assertion and plaintiff has presented no evidence to support it. To the extent an affidavit (or an unsworn statement made under penalty of perjury) improperly sets forth matters which are not of a factual nature or of which the affiant does not have personal knowledge, such statements will not be considered as sufficient summary judgment proof. *Castillo v. Bowles*, 687 F.Supp. 277, 280-81 (N.D.Tex. 1988)(affidavits signed by pro se litigant and various inmates of jail merely stated conclusory allegations and were not based on personal knowledge; thus affidavits not sufficient to defeat summary judgment motion brought by defendant). Moreover, to the extent those affidavits inappropriately set forth pleadings and arguments, they will be considered as such.

Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Plaintiff's failure to present evidence to support this aspect of his deliberate indifference claim against defendant BOLAND defeats this claim. Although no cause for commendation, even if BOLAND failed to alleviate a significant risk which he should have

perceived but did not, this cannot be condemned under Eighth Amendment caselaw as an infliction of punishment. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811, 823 (1994). Defendant BOLAND has shown he is entitled to summary judgment on this claim.

Finally, plaintiff has not presented evidence to defeat defendant BOLAND's qualified immunity with respect to plaintiff's excessive force and deliberate indifference claims against him and has not defeated defendant FRESCAS' entitlement to qualified immunity as to plaintiff's claim of deliberate indifference to a serious medical need.

## CONCLUSION

For the reasons set forth above, and drawing all reasonable inferences in favor of plaintiff, there is no material issue of disputed fact which precludes entry of summary judgment for defendant BOLAND on the merits and on the issue of qualified immunity on all claims asserted against him. There is no evidence which precludes summary judgment for defendant FRESCAS on the merits and on the issue of qualified immunity on the claim of deliberate indifference to a serious medical need. Federal Rule of Civil Procedure 56(a).

Pursuant to 28 U.S.C. § 1915A(2), § 1915(e)(2), it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that defendants' Motion for Summary Judgment be GRANTED, IN PART, AND DENIED, IN PART, that plaintiff's Motion for Summary Judgment be DENIED, and that plaintiff's claim of deliberate indifference to a serious medical need against defendant FRESCAS be DISMISSED WITH PREJUDICE and all claims against DEFENDANT BOLAND be DISMISSED WITH PREJUDICE.

As to the excessive force claim against defendant FRESCAS, plaintiff has presented evidence of an unprovoked assault and has presented evidence explaining why his alleged injury

was not documented or treated.  Defendant FRESCAS has failed to show any legal basis by which

the Court can reject the evidence submitted by plaintiff and/or make a determination that

plaintiff's evidence is not credible.  Consequently, plaintiff's claim of unnecessary use of

excessive force against defendant FRESCAS should proceed.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

**IT IS SO RECOMMENDED.**

ENTERED this 24th day of February, 2014.


_____

CLINTON E. AVERITTE

UNITED STATES MAGISTRATE JUDGE


## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In
the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections
is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the
signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by
electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the
fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.
*See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report
and Recommendation."  Objecting parties shall file the written objections with the United States
District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely
file written objections to the proposed findings, conclusions, and recommendation contained in
this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on
appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set
forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v.
United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by
statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v.*

*Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).